IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WEBNX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CUMMINS INC. and CUMMINS BRASIL, LTDA.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING WITHOUT PREJUDICE MOTION TO DISMISS CUMMINS BRASIL FOR LACK OF PERSONAL JURISDICTION<br><br>Case No. 1:23-cv-00055-JNP-JCB<br><br>District Judge Jill N. Parrish |

Plaintiff WebNX, Inc. sued defendants Cummins Inc. (Cummins) and Cummins Brasil, Ltda. (Cummins Brasil) for claims arising from a fire caused by a diesel generator that the defendants designed and manufactured. Cummins Brasil moves to dismiss the claims against it, arguing that this court lacks personal jurisdiction. ECF No. 25. The court DENIES the motion without prejudice. Cummins Brasil may renew its motion after WebNX has had an opportunity to conduct jurisdictional discovery.

## BACKGROUND

A.  *Allegations of the Complaint*[1]

In 2014, WebNX entered into a long-term lease for a building to house computer servers. WebNX purchased a diesel generator from its landlord to power the servers in the event of a power outage. On April 4, 2021, a power outage occurred, and the generator automatically turned on. After operating properly for 30 minutes, a piece of the engine punctured the exterior of the

---

[1] In this section, the court recites the facts as alleged in WebNX's complaint.

generator. Flames emitted from the hole in the generator, causing a fire in the building. The fire damaged WebNX's computer servers, other WebNX property, and the building itself.

WebNX sued the companies that designed, manufactured, and originally sold the generator—Cummins and Cummins Brasil—asserting claims for strict product liability, negligence, and breach of implied and express warranties. WebNX sought damages caused by the fire. Cummins Brasil, a citizen of Brazil, moves to dismiss the claims against it under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the court lacks personal jurisdiction over it.

    B.    *Jurisdictional Facts*

Because Cummins Brasil brings a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court may consider matters outside of the pleadings such as affidavits. *See* FED. R. CIV. P. 12(d). Any disputes arising from conflicting affidavits are resolved in favor of WebNX as the plaintiff. *See Behagen v. Amateur Basketball Asso.*, 744 F.2d 731, 733 (10th Cir. 1984).

Cummins Brasil proffers two declarations in support of its motion to dismiss. The affiants state that Cummins Brasil, which manufactures certain component parts for diesel generators, is a wholly owned subsidiary of Cummins. The parts made by Cummins Brasil are shipped to Cummins in Minnesota, which manufactures and markets the finished generators. The declarations further aver that the generator at issue in this lawsuit was manufactured and assembled in Minnesota in 1992, using some component parts manufactured by Cummins Brasil. The generator was then distributed by Cummins Rocky Mountain, a Cummins affiliate that no longer exists.

Because WebNX does not dispute these assertions, the court accepts them as true for the purposes of this motion.[2]

## ANALYSIS

### I. PERSONAL JURISDICTION

To determine whether it has personal jurisdiction over a defendant, the court first looks to whether exercising personal jurisdiction satisfies the forum state's long-arm statute. Utah's statute "allows Utah's courts to exert personal jurisdiction over any person, whether or not a resident of Utah, if that person committed any of the acts enumerated in the statute." *Olseth v. Larson*, 158 P.3d 532, 535 (Utah 2007). One of acts listed in the statute is "the causing of any injury within this state whether tortious or by breach of warranty." UTAH CODE § 78B-3-205(3). Because WebNX alleges that Cummins Brasil cased injury in Utah by manufacturing and designing faulty parts that caused a fire that damaged its property, the specific act requirement has been satisfied. Thus, Utah's long-arm statute permits jurisdiction to the same extent permitted by the Constitution. UTAH CODE § 78B-3-201(3).

---

[2] In its response brief, WebNX reproduced a picture of a serial number plate affixed to the generator that states: "Manufactured By Cummins Brasil Ltda." Cummins Brasil responded with a declaration of a fire inspector that included a picture of a separate data tag attached to the generator that lists an address in Minnesota and states: "Made in U.S.A." In its reply brief, Cummins Brasil argues that its serial number plate refers only to a component part that it manufactured in Brazil, and not to the generator as a whole, which was assembled in Minnesota.

Despite including the picture of the Cummins Brasil serial number plate in its brief, WebNX does not dispute that Cummins Brasil shipped component parts to Minnesota for final assembly of the generators. In a section of its response brief entitled "Facts in Support of Personal Jurisdiction," WebNX accepts Cummins Brasil's assertion that it shipped component parts to Minnesota for final assembly.

The court must next determine whether the exercise of personal jurisdiction over Cummins Brasil comports with the due process protections of the Constitution. "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, only specific personal jurisdiction is at issue. Specific jurisdiction involves a two-step inquiry. The court must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

A defendant's contacts with the forum state are sufficient when two requirements are met: (1) "the defendant purposefully directed its activities at residents of the forum," and (2) "the plaintiff's claim arises out of or results from the actions by the defendant himself that create a substantial connection with the forum state." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (citation omitted). Here, there is no evidence that Cummins Brasil had any direct contacts with Utah. Instead, WebNX argues that Cummins Brasil purposefully directed its activities at Utah residents by shipping parts to Cummins in Minnesota with the knowledge that Cummins would incorporate the parts into generators and distribute them throughout the United States, including Utah. In other words, WebNX asserts a "stream-of-commerce" theory of purposeful direction.

4

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the Supreme Court addressed the conditions under which placing goods into the stream of commerce can subject the manufacturer to specific personal jurisdiction in the state where the goods end up. But the Court did not agree on a majority opinion. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" *Marks v. United States*, 430 U.S. 188, 193 (1977) (alteration in original) (citation omitted).

The opinion with the narrowest holding in *McIntyre* was the concurring opinion of Justice Breyer, which "adhere[d] strictly" to the Court's prior precedents. *McIntyre*, 564 U.S. at 893. The Breyer concurrence affirmed that a manufacturer may be subject to personal jurisdiction in a state if it "delivered its goods in the stream of commerce 'with the expectation that they will be purchased'" by end-users in that state. *Id.* at 889 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). The concurrence concluded, however, that the mere possibility that a good may arrive in a particular state by way of a third-party distributor is not sufficient to establish personal jurisdiction. Courts must also consider (1) whether there was a "'regular . . . flow' or 'regular course' of sales" in the forum state[3] and (2) whether there was

---

[3] Justice Brennen's references to a "regular . . . flow" or "regular course" of sales are quotes from two concurrences in another case where the Supreme Court failed to achieve a majority opinion regarding a stream of commerce theory of personal jurisdiction: *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). In Justice Brennen's concurrence in *Asahi Metal*, he opined: "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117. In Justice Steven's concurrence in that case, he stated: "In most circumstances I would be inclined to conclude that a regular course of

5

evidence that the manufacturer had done "something more" to direct its product to the forum state, "such as special state-related design, advertising, advice, [or] marketing." *Id.* (first alteration in original) (citations omitted). Under the facts of *McIntyre*, a foreign manufacturer that sold its product in the United States through a third-party distributor did not have sufficient contacts with the state of New Jersey to establish personal jurisdiction where the evidence suggested that only one product was sold in the state and where there was no indication that the manufacturer had done something more to direct its goods to the state. *Id.* at 888–89.

Both the Tenth Circuit and other district courts within the circuit agree that the controlling Breyer concurrence in *McIntyre* requires something more than mere knowledge that a product may eventually find its way to the forum state. In *XMission, L.C. v. Fluent LLC*, the Tenth Circuit held that the Breyer concurrence

> agreed with the plurality opinion in rejecting the notion that a producer could be "subject to jurisdiction for a products-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states." Thus, six Justices emphasized that personal jurisdiction did not exist simply because of a defendant's awareness that its products could, through the stream of commerce, end up in the forum State.

955 F.3d 833, 843 (10th Cir. 2020) (citation omitted); *accord Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1184 (D. Colo. 2019) ("[I]t is reasonably clear from the divided Supreme Court decisions that 'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." (citation omitted)).

---

dealing that results in deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment' . . . ." *Id.* at 122.

In this case, WebNX has not supplied evidence suggesting anything more than knowledge that Cummins Brasil's parts *could* reach Utah through the stream of commerce. There is no evidence that, prior to 1992, Cummins Brasil was aware of a regular and substantial course of sales of generators containing its parts in Utah. Nor Has WebNX produced any evidence that Cummins Brasil directed its parts toward Utah through state-related design or advertising. Accordingly, WebNX has not satisfied its burden of showing that Cummins Brasil is subject to personal jurisdiction in Utah. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (the plaintiff bears the burden of making a prima facie showing of personal jurisdiction).

## II.  JURISDICTIONAL DISCOVERY

WebNX argues that it should be allowed to conduct jurisdictional discovery if the court finds its showing of personal jurisdiction to be lacking. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (citation omitted). Although courts have discretion when ruling on discovery requests, a court abuses that discretion when it disallows discovery where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020) (alteration in original) (citation omitted).

A more satisfactory showing of facts relevant to WebNX's stream of commerce theory of personal jurisdiction is necessary here. One of the ways in which WebNX could establish personal jurisdiction is through evidence of Cummins Brasil's knowledge of a regular flow of its parts into Utah prior to 1992. This information is uniquely within the possession of Cummins and Cummins Brasil. Additionally, any evidence of Utah-related design or advertising would likely only be

recovered through discovery. Accordingly, this is a case where discovery is required to give the plaintiff the opportunity to acquire evidence to support its case for personal jurisdiction.

The court, therefore, denies Cummins Brasil's motion to dismiss without prejudice to raise the issue of personal jurisdiction in the future. The court orders that WebNX may conduct discovery calculated to obtain information relevant to the issue of this court's ability to exercise personal jurisdiction over Cummins Brasil. If the parties can agree as to the underlying jurisdictional facts, Cummins Brasil may file a renewed motion to dismiss based on declarations. If the parties cannot agree, Cummins Brasil may request an evidentiary hearing to resolve any disputes.[4] *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) ("A district court has discretion to resolve [a motion to dismiss for lack of personal jurisdiction] in a variety of ways—including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself.").

## III.   RULE 12(b)(6)

When Cummins Brasil filed it motion to dismiss for lack of personal jurisdiction, Cummins' motion to dismiss this action pursuant to Rule 12(b)(6) was pending before the court. In the alternative to dismissal for lack of personal jurisdiction, Cummins Brasil incorporated by reference Cummins' arguments for dismissal for failure to state a claim for relief. After Cummins Brasil filed its motion to dismiss, the court denied Cummins' motion to dismiss this action under

---

[4] In its response brief, WebNX requested a stay in the proceedings to conduct jurisdictional discovery. The court finds that a stay is not necessary. In order to prevent further delays in the litigation of this case and to avoid wasteful duplication of effort, the parties may conduct jurisdictional discovery in conjunction with discovery on the merits of WebNX's claims.

Rule 12(b)(6). ECF No. 27. The court denies Cummins Brasil's motion to dismiss for failure to state a claim for the same reasons expressed in the court's prior order.

## CONCLUSION

For the above-stated reasons, the court orders as follows:

1. Cummins Brasil's motion to dismiss for lack of personal jurisdiction is denied without prejudice. Cummins Brasil may reraise the issue of personal jurisdiction after WebNX has conducted jurisdictional discovery.

2. Cummins Brasil's motion to dismiss for failure to state a claim is denied.

DATED September 12, 2024.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge